NOT FOR PUBLICATION

RECEIVED
SEP 06 2018
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LINDA PRATT, *as personal representative on behalf of* TARIK PRATT, *an incompetent person*,

    Plaintiff,

v.

ANN KLEIN FORENSIC CENTER, ANCORA PSYCHIATRIC HOSPITAL, DR. ELAINE MARTIN, LINDA ELIAS, DR. DARIUSZ CHACINSKI, DR. BENITO MARTY, DR. SAFEER ANSARI, ANN KLEIN DOCTORS 1-10, ANN KLEIN STAFF/ADMINISTRATORS 1-10, ANCORA DOCTORS 1-10, and ANCORA STAFF/ADMINISTRATORS 1-10,

    Defendants.

Civ. No. 15-5779

**OPINION**

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter is before the Court upon a Motion to Dismiss Plaintiff's Fifth Amended Complaint (ECF No. 71) filed by Defendants Ann Klein Forensic Center and Ancora Psychiatric Hospital (the "State Hospital Defendants"). (ECF No. 73.) Plaintiff Linda Pratt, on behalf of her son Tarik Pratt, opposes. (ECF No. 75.) The Court has decided the Motion based on the written submissions of the parties and without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the State Hospital Defendants' Motion is denied.

## BACKGROUND

Tarik Pratt suffered a traumatic brain injury over fifteen years ago. He is legally incompetent, and was previously involuntarily civilly committed to the Ann Klein Forensic

1

Center ("AKFC") beginning on June 2, 2011. (Fifth Am. Compl. Count I ¶¶ 1–4, 8, ECF No. 71.)[1] He was transferred from AKFC to Ancora Psychiatric Hospital ("Ancora") on May 8, 2015. (*Id.* Count II ¶ 5.) He was transferred back to AKFC on October 28, 2015. (*Id.* Count III ¶ 2.) He now resides with his mother. (*Id.* Parties ¶¶ 1–3.) AKFC and Ancora are both state psychiatric hospitals. (*Id.* Parties ¶¶ 4–5; *see also id.* Count V ¶ 8.)

Plaintiff alleges that, after Mr. Pratt was admitted to AKFC in 2011, Mr. Pratt was inappropriately labeled as schizophrenic, his medication was changed to correspond to this misdiagnosis, and he "became highly drugged up, sedated and overmedicated, much to his detriment." (*Id.* Count I ¶¶ 10–16.) On September 16, 2011, Mr. Pratt, in a heavily overmedicated state, was persuaded by another confined patient to perform a sexual act upon him. (*Id.* Count I ¶ 17.) Mr. Pratt was then transferred to an intensive care unit by AKFC staff and placed in seclusion as punishment (*id.* Count I ¶¶ 18–19); he was again secluded as retaliation when his mother, Plaintiff Linda Pratt, began to make inquiries about his treatment at AKFC (*id.* Count I ¶¶ 27–30, 34). Plaintiff filed a Notice of Tort Claim against AKFC on December 6, 2011. (*Id.* Count I ¶ 32.) Plaintiff alleges that instead of investigating the circumstances around the sexual conduct, and the alleged neglect and abuse of Mr. Pratt which precipitated it, Defendants retaliated against Mr. Pratt by undertaking harsh measures including solitary confinement, starvation, denial of medical care, and physical abuse. (*See, e.g., id.* Count I ¶¶ 39–41.)

Mr. Pratt was transferred to Ancora Psychiatric Hospital on May 8, 2015. (*Id.* Count II ¶¶ 2–5.) At Ancora, Mr. Pratt's medications were again changed, in a manner that was "inappropriate, unnecessary, not in the patient's best interests and inconsistent with his being in

---

[1] As the Complaint is not successively numbered, the Court refers to the paragraph numbering of each separate Count.

the least restrictive environment" (*id.* Count II ¶ 12), and again Mr. Pratt deteriorated due to the change in his medication (*id.* Count II ¶ 14) and suffered harsh and abusive consequences (*id.* Count II ¶ 15). Mr. Pratt was overmedicated at Ancora until he was transferred back to AKFC on October 28, 2015. (*Id.* Count III ¶¶ 2–4.)

As the parties are familiar with the procedural history in this matter, the Court reprises only the relevant events leading up to the instant Motion. Plaintiff filed the original federal complaint in this action on July 27, 2015. (ECF No. 1.) She filed an Amended Complaint on August 31, 2015 (ECF No. 3), a Second Amended Complaint on October 6, 2015 (ECF No. 5), and a Third Amended Complaint on November 1, 2015 (ECF No. 8). On February 18, 2016, the Court granted the State Hospital Defendants' Motion to Dismiss (ECF No. 28) and dismissed all claims against the State Hospital Defendants in Plaintiff's Third Amended Complaint on the basis of Eleventh Amendment state sovereign immunity. (ECF Nos. 36, 37.)

On August 15, 2017, Plaintiff filed a new complaint in the Superior Court of New Jersey, Law Division, Mercer County, alleging similar claims against similar defendants as appeared in this existing federal lawsuit on the basis of the same factual predicate. (*See* Civ. No. 17-6865, Defs.' Notice of Removal ¶ 5, ECF No. 1; *see also id.*, Ex. A (state complaint dated July 21, 2017).) In that complaint, pursuant to New Jersey Court Rule 4:5-1(b)(2), Plaintiff noted that "the mater [sic] in controversy is the subject of an action pending in the federal court entitled Linda Pratt v. Ann Klein Forensic Center et al. under Civil Action No. 3:15-05779[.]" (*Id.*, Ex. A at 25.) The defendants removed to federal court on September 7, 2017, and the case was docketed at Civ. No. 17-6865, assigned to District Judge Brian R. Martinotti, and referred to Magistrate Judge Lois H. Goodman.

On a September 11, 2017 conference call with Judge Goodman for the case at bar (Civ. No. 15-5779, assigned to Judge Thompson), to which Judge Goodman was also referred, the parties communicated to the Court that Mr. Pratt could not be deposed and discovery could not progress. (*See* ECF Nos. 49–51.) Accordingly, on September 14, 2017 the Court stayed and administratively terminated this matter. (ECF No. 52.) Further, on September 15, 2017, Judge Goodman communicated with the parties about dismissing the second federal case (Civ. No. 17-6865) and instead filing that complaint as a Fourth Amended Complaint in the existing federal action. (ECF No. 53 (email from Judge Goodman's Chambers to the parties); *see also* ECF No. 54 (Stipulation of Dismissal With Prejudice and Stipulation of Amended Pleading in Civil Action No. 15-5779 and Consent Order); Civ. No. 17-6865, ECF No. 3 (dismissing second federal complaint with prejudice).) On October 2, 2017, Judge Goodman signed a stipulation and order that the complaint which had been filed in the second federal case (Civ. No. 17-6865) would be filed in the original federal case (Civ. No. 15-5779) as the Fourth Amended Complaint. (ECF No. 56.)

In January 2018, after this Court lifted the stay and administrative termination of this case (*see* ECF Nos. 57, 59), the Fourth Amended Complaint was formally filed (ECF No. 60). Plaintiff filed the Fifth Amendment Complaint on May 10, 2018 (ECF No. 71), the governing complaint in this action (ECF No. 76). As in prior complaints, the Fifth Amended Complaint alleges multiple constitutional and statutory violations, including, as relevant on this Motion, the following claims against the State Hospital Defendants: violations of multiple New Jersey statutes related to civilly committed individuals and developmentally disabled individuals (Count IV); discrimination claims under Title II of the Americans with Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("NJLAD") (Count V); and retaliation claims under

4

Title V of the ADA and corollary provisions of the NJLAD (Count VI). On July 9, 2018, the State Hospital Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) based on state sovereign immunity. (ECF No. 73.) Plaintiff received an automatic extension of the return date (ECF No. 74) and timely filed opposition on July 18, 2018 (ECF No. 75). The State Hospital Defendants did not reply. The Motion is now before the Court.

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction.[2] "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A motion to dismiss for lack of subject matter jurisdiction may attack (1) the complaint on its face or (2) the existence of subject matter jurisdiction in fact, beyond the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "The defendant may facially challenge subject matter jurisdiction by

---

[2] The Third Circuit has questioned whether sovereign immunity implicates a federal court's subject matter jurisdiction. *Compare Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 197 n.6 (3d Cir. 2008) (noting similarity to subject matter jurisdiction, as sovereign immunity can be raised for the first time on appeal, as well as differences from subject matter jurisdiction, as sovereign immunity can be waived), *and In re Hechinger Inv. Co. of Del., Inc.*, 335 F.3d 243, 249–50 (3d Cir. 2003) (determining to proceed to merits before addressing Eleventh Amendment issue), *with Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction. Accordingly, the motion may properly be considered a motion to dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984))). *See also Garcia v. Richard Stockton Coll. of N.J.*, 210 F. Supp. 2d 545, 548 (D.N.J. 2002) ("To the extent, then, that sovereign immunity would bar supplemental state-law claims against a state defendant, it is jurisdictional, and the burden of proof remains with the plaintiff."). Whether or not Eleventh Amendment state sovereign immunity is purely jurisdiction, the Third Circuit cites Rule 12(b)(1) as the proper procedural vehicle for analysis. *See, e.g., Wilson v. N.J. Dep't of Corr.*, 2017 WL 4618156, at *3 (D.N.J. Oct. 13, 2017) (discussing Third Circuit precedent).

5

arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008). On a facial attack, a court "must consider only the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc.*, 220 F.3d at 176 (citing *Mortensen*, 549 F.2d at 891).

## ANALYSIS

As a preliminary matter, more than two years ago this Court dismissed all claims against the State Hospital Defendants under Plaintiff's Third Amended Complaint (ECF No. 8) on the basis of sovereign immunity. (ECF Nos. 36, 37.) These Defendants now seek to dismiss the NJLAD claims in Plaintiff's Fifth Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) on the same basis. (*See generally* ECF No. 73-1.) The Court stands by the reasoning in its earlier Opinion, but as this action is governed by a new complaint and different procedural predicate, the Court newly considers whether sovereign immunity applies.

I. Governing Law on State Sovereign Immunity

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The doctrine of Eleventh Amendment sovereign immunity also guards against suits by citizens against their home State, *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 197 (3d Cir. 2008) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)), and protects "arms of the state"—state agencies, departments, and institutions where the State itself is the real party in interest. *Alden v. Maine*, 527 U.S. 706, 740 (1999); *Pennhurst*, 465 U.S. at 100; *Karns v. Shanahan*, 879 F.3d 504, 512–15 (3d Cir. 2018) (discussing *Fitchik v. N.J. Transit Rail*

6

*Operations*, 873 F.2d 655, 659 (3d Cir. 1989)). Pursuant to this doctrine, arms of the state may only be sued when the State has expressly and unequivocally waived its sovereign immunity, *see, e.g., Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, 675–76 (1999), or when Congress has abrogated the State's sovereign immunity pursuant to its enforcement powers under section Five of the Fourteenth Amendment, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55–66 (1996). Both waiver and abrogation abide by a "clear-statement rule . . . which the [Supreme] Court has described in fairly sweeping language . . . ." *Garcia*, 210 F. Supp. 2d at 550 (citing *Coll. Sav. Bank*, 527 U.S. at 676). Accordingly, the Third Circuit requires "indulg[ing] every reasonable presumption against waiver." *Lombardo*, 540 F.3d 190, 198 (3d Cir. 2008) (quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937)).

Under Third Circuit precedent, sovereign immunity is comprised of two components: immunity from suit and immunity from liability. *Lombardo*, 540 F.3d at 194. "A State may waive its immunity from suit by invoking federal court jurisdiction voluntarily." *Id.* at 196; *see also Royster v. N.J. State Police*, 152 A.3d 900, 907–08 (N.J. 2017) (collecting cases and discussing *Lombardo*). The Supreme Court has found waiver by removal only when a state voluntarily removes state law claims filed in state court to federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 619–24 (2002). However, "while voluntary removal waives a State's immunity from suit in a federal forum, the removing State retains all defenses it would have enjoyed had the matter been litigated in state court, including immunity from liability." *Lombardo*, 540 F.3d at 198. In other words, the State retains "defenses provided by *its own* sovereign immunity law." *Id.* at 200 (emphasis added); *id.* at 198 n.8; *see also Mason v. Campbell*, 2016 WL 8716458, at *4 (E.D. Pa. July 29, 2016) (citing *Lombardo*, 540 F.3d at

7

198–200); *Boone v. Pa. Office of Vocational Rehab.*, 373 F. Supp. 2d 484, 494 (M.D. Pa. 2005) ("[W]hatever immunity a state enjoyed in state court remains with it after removal to federal court."). "*Lombardo* emphasizes that the liability of a sovereign depends on the cause of action." *Wilson*, 2017 WL 4618156, at *5 (citing *Lombardo*, 540 F.3d at 194); *see also Lapides*, 535 U.S. at 617; *Watters v. Wa. Metro. Area Transit Auth.*, 295 F.3d 36, 42 n.13 (D.C. Cir. 2002).

The State Hospital Defendants seek dismissal only of Plaintiff's NJLAD claims (Defs.' Br. at 6, ECF No. 73-1), and therefore Plaintiff only defends the NJLAD claims (Pls.' Br. in Opp'n at 3, ECF No. 75). Though Defendants' Motion seems to implicate the Court's subject matter jurisdiction, *see supra* note 2, the Court has not *sua sponte* reviewed all of Plaintiff's claims brought against the State Hospital Defendants because "while a federal court is obligated to consider whether it possesses subject-matter jurisdiction even if the issue is not raised by the parties, a federal court need not address the issue of sovereign immunity if neither party brings it to the attention of the court." *In re Hechinger Inv. Co. of Del., Inc.*, 335 F.3d at 249 (citation omitted); *see also Wis. Dep't. of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) ("[T]he Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The state can waive the defense. Nor need a court raise the defect on its own. Unless the State raises the matter, a court can ignore it."). Because the State Hospital Defendants raised the defense with respect to Plaintiff's NJLAD claims alone, the Court limits its discussion to Plaintiff's NJLAD claims.

II. <u>Application to this Case</u>

As a threshold matter, because the State Hospital Defendants were created by New Jersey statute, *see* N.J.S.A. 30:1-7, the state controls and funds them, they lack authorization to sue or be sued in their own right, and any judgment against them would be paid from the state treasury,

they are traditionally accorded sovereign immunity as arms of the state. *See, e.g., Pratt v. Ann Klein Forensic Ctr.*, 2016 WL 660664, at *3 (D.N.J. Feb. 18, 2016) (citing *Hobson v. Tremmel*, 2013 WL 3930132, at *4 (D.N.J. July 30, 2013); *Brown ex rel. Payton v. Ancora Psychiatric Hosp.*, 2012 WL 4857570, at *1 (D.N.J. Oct. 11, 2012) (collecting cases)). In addition to being immune from federal claims where the State has not waived its immunity and Congress has not abrogated the State's immunity, the State Hospital Defendants are generally also "immune from suit under [New Jersey's] own laws in federal court. This Court has no jurisdiction to hear supplemental state-law claims against sovereign entities absent consent by the entity to suit in federal court." *Garcia*, 210 F. Supp. 2d at 550.

The question becomes whether the State Hospital Defendants' entitlement to sovereign immunity has been properly waived or abrogated with respect to Plaintiff's NJLAD claims. Applying the waiver by removal rule announced in *Lapides* and clarified in *Lombardo*, Plaintiff argues that the State Hospital Defendants unequivocally and voluntarily waived their sovereign immunity on the NJLAD claims when they removed Plaintiff's 2017 state complaint to federal court.[3] (*See* Pls.' Br. in Opp'n at 3.)[4]

---

[3] Though the Fourth Amended Complaint (ECF No. 60) is the version that Defendants removed, the waiver effected by removal to federal court would extend to the Fifth Amended Complaint (ECF No. 71). *See Wilson*, 2017 WL 4618156, at *5 ("Where, as here, the new counts are state or federal analogs of counts existing in the original complaint and stem from the same underlying transaction, the counts are within this Court's jurisdiction. These claims do not concern a separate controversy, so sovereign immunity to suit in federal court is waived as to them as well." (citing *Druz v. Noto*, 2010 WL 2179550, at *5 (D.N.J. May 28, 2010))).

[4] The history of this case complicates the waiver by removal analysis. Here, *Plaintiff* invoked federal jurisdiction on this case or controversy when she filed her original complaint in 2015 in federal court. *Cf. Wilson*, 2017 WL 4618156, at *2 (noting that "immunity at least as to the original complaint was waived" where original complaint had arrived in federal court by way of removal, and extending that waiver to a subsequent amended complaint). After all claims against the State Hospital Defendants were dismissed in February 2016 on the basis of sovereign immunity, Plaintiff filed the state court lawsuit, alleging new claims against the State Hospital Defendants under Titles II and V of the ADA and corollary protections of the NJLAD. Plaintiff acknowledged in the state court complaint that the matter in controversy was the subject of an

Applying *Lombardo*, the Court finds that removal in this case did waive the State Hospital Defendants' Eleventh Amendment sovereign immunity to suit; however, they retain any available state sovereign immunity affirmative defense under New Jersey law that would provide immunity from liability. "[T]he NJLAD clearly identifies the State as a potential defendant . . . and authorizes private suits 'in Superior Court[.]'" *Garcia*, 210 F. Supp. 2d at 550 (citing N.J.S.A. 10:5-5(e), 10:5-13). Accordingly, the State has unequivocally waived its sovereign immunity in state courts for claims arising under the NJLAD. Given that the NJLAD claims could have been pursued in state court and were properly filed there despite the existing federal action on the same case or controversy,[5] the Court denies Defendants' Motion and determines that the State Hospital Defendants consented to suit in federal court on the NJLAD claims.[6] Accordingly, the NJLAD claims in Counts V and VI survive this Rule 12(b)(1) motion.

## CONCLUSION

For the reasons discussed above, the State Hospital Defendants' Motion to Dismiss is denied. An appropriate order will follow.

Date: August 21st

ANNE E. THOMPSON, U.S.D.J.

---

action already pending in federal court. Further, after Defendants removed that complaint to federal court, the parties were directed by Judge Goodman to seek dismissal of that second federal action and file the state court complaint as an amended complaint in this existing case. Finally, Defendants have moved to dismiss claims in Plaintiff's Fifth Amended Complaint, filed only in the existing federal case. As such, this is not a typical case where removal evidences an express, voluntary, and unequivocal intent by these Defendants to invoke federal jurisdiction on these claims. *See Lombardo*, 540 F.3d at 197.

[5] Though this kind of fracturing is undesirable for judicial economy, it is accepted by the U.S. Supreme Court. *See Garcia*, 210 F. Supp. 2d at 550 (citing *Pennhurst*, 465 U.S. at 121–22).

[6] This is an unusual result, as NJLAD claims are usually dismissed in federal courts under Rule 12(b)(1) pursuant to Eleventh Amendment state sovereign immunity. *Garcia*, 210 F. Supp. 2d at 550–51; *see also, e.g., Sweet-Springs v. Dep't of Children & Families*, 2013 WL 3043644, at *6 (D.N.J. June 17, 2013); *Fidanzato v. Somerset, Hunterdon, & Warren Ctys. Vicinage 13*, 2012 WL 4508008, at *7 (D.N.J. Sept. 28, 2012). Nevertheless, Defendants' specific litigation conduct of removing Plaintiff's state court action to federal court and consenting to consolidation with this existing federal action requires this result.

10