NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDA PRATT, individually and as a personal representative on behalf of TARIK PRATT, an incompetent person,<br><br>Plaintiff,<br><br>v.<br><br>ANN KLEIN FORENSIC CENTER *et al.*,<br><br>Defendants. | Civ. No. 15-5779<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon two Motions for Reconsideration: one filed by Plaintiff Linda Pratt ("Plaintiff"), individually and on behalf of her son Tarik Pratt ("Tarik") (ECF No. 105), and one filed by Defendants Ann Klein Forensic Center ("AKFC") and Dr. Dariusz Chacinski (collectively, "Defendants") (ECF No. 107). Both Motions are opposed. (ECF Nos. 110, 112.) The Court has decided the Motions based on the parties' written submissions and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Plaintiff's Motion is granted, and Defendants' Motion is denied.

## BACKGROUND

Plaintiff brings this action as a representative on behalf of her son, Tarik, an incompetent person who was civilly committed at Defendant AKFC, a psychiatric hospital located in New Jersey, due to a traumatic brain injury he had suffered years before. (Op. at 1–2, ECF No. 102.) Tarik first became a patient at Defendant AKFC on June 2, 2011. (*Id.* at 2.) He was transferred

1

to a different psychiatric hospital on May 8, 2015, but transferred back to Defendant AKFC on October 28, 2015. (*Id.*) Plaintiff alleges that during Tarik's stay at Defendant AKFC, he was subject to (1) isolation and seclusion; (2) abuse, neglect, and retaliation; and (3) overmedication. (*Id.*)

Plaintiff, on behalf of Tarik, filed the Complaint on July 27, 2015. (ECF No. 1.) After several amendments (*see* Op. at 7–8 (describing procedural history)), Plaintiff filed the Fifth Amended Complaint, the operative complaint, on May 10, 2018. (5th Am. Compl. at 1, ECF No. 71.) The Fifth Amended Complaint alleges six counts: (1) violations of speech and petition rights via 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-1 (5th Am. Compl. at 4–10); (2–3) violations of substantive due process via § 1983 and the NJCRA (5th Am. Compl. at 10–18); (4) various state statutory violations (*id.* at 18–19); (5) discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12(f)(1) (5th Am. Compl. at 19–21); and (6) retaliation pursuant to the ADA, § 12203, and NJLAD, N.J.S.A. § 10:5-12d (5th Am. Compl. at 22–23).

Defendants moved for summary judgment on March 29, 2019 (ECF No. 93), and on July 24, 2019, the Court granted in part and denied in part that motion (Order at 1–2, ECF No. 103). Of import here, the Court granted summary judgment in favor of Defendant AKFC on Count V, which alleges that Defendant AKFC discriminated against Tarik in violation of the ADA and NJLAD. (Order at 2; Op. at 20–22.) The Court also denied summary judgment in regard to Count III, which alleges that Defendant Chacinski placed Tarik in housing that was more restrictive than necessary in violation of his substantive due process rights, and Count VI, which alleges that Defendant AKFC retaliated against Tarik in violation of the ADA and NJLAD. (*Id.*

at 14–18, 23; Order at 2.)

Plaintiff filed her Motion for Reconsideration on August 5, 2019 (ECF No. 105), and Defendants filed their Motion for Reconsideration on August 7, 2019 (ECF No. 107). Plaintiff asks the Court to reconsider only its decision granting summary judgment in favor of Defendant AKFC on Count V (Pl.'s Br. at 1, ECF No. 105-1), while Defendants ask the Court to reconsider only its decision denying summary judgment on Counts III and VI (Defs.' Br. at 1–3, ECF No. 107-1). The parties opposed each other's motion on September 3, 2019. (ECF Nos. 110, 112.) The parties replied on September 9, 2019. (ECF Nos. 113–14.) Both Motions are currently before the Court.

## **LEGAL STANDARD**

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Local Civil Rule 7.1(i), a motion for reconsideration must be based on one of three grounds: (1) an intervening change in controlling law, (2) new evidence not previously available, or (3) a clear error of law or manifest injustice. *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). Generally, a motion for reconsideration is intended "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). But "[r]econsideration is an extraordinary remedy that is granted very sparingly." *Brackett v. Ashcroft*, 2003 U.S. Dist. LEXIS 21312, at *2 (D.N.J. Oct. 7, 2003) (internal citations omitted); *see also* L. Civ. R. 7.1(i), cmt. 6(d). A motion for reconsideration may be granted only if there is a dispositive factual or legal matter that was presented but not considered that would have reasonably resulted in a different conclusion by the court. *White v. City of Trenton*, 848 F. Supp. 2d 497, 500 (D.N.J. 2012). Mere disagreement with a court's decision should be raised through the appellate process and is thus inappropriate on a motion for reconsideration. *United*

3

*States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999).

## **DISCUSSION**

The parties, independently, urge the Court to reconsider its July 24, 2019 Opinion and Order. They both rely on one ground for reconsideration: the need to correct a "clear error of law or manifest injustice." Defendants argue that the Court erred in denying their Motion for Summary Judgment in regard to Count III, which alleges that Defendant Chacinski placed Tarik in housing that was more restrictive than necessary in violation of his substantive due process rights, and Count VI, which alleges that Defendant AKFC retaliated against Tarik in violation of the ADA and NJLAD. Separately, Plaintiff contends that the Court erred in granting summary judgment in favor of Defendant AKFC on Count V, which alleges that Defendant AKFC discriminated against Tarik in violation of the ADA and NJLAD. The Court addresses each of these arguments in turn.

**I.     Defendants' Motion for Reconsideration (Counts III and VI)**

    A.     *Substantive Due Process Violation via § 1983 (Count III)*

Count III alleges that Defendant Chacinski, Tarik's treating clinical psychiatrist at Defendant AKFC, placed Tarik in housing that was more restrictive than necessary, violating his substantive due process rights. Defendant Chacinski placed Tarik, who was already residing at the inpatient mental health facility, in the intensive treatment unit ("ITU") on September 19, 2011, following an incident. (*See* Op. at 2–3 (discussing details of the incident).) Plaintiff contends that placing Tarik in ITU—which is reserved for someone who has been fighting, is in poor control, or is a danger to themselves or others—was unnecessary and overly restrictive.

Defendants do not seem to object to the standard that the Court identified and applied. (*See* Defs.' Br. at 10–11.) That standard inquired

> whether (1) pursuant to *Bell* [*v. Wolfish*, 441 U.S. 520, 536 (1979)], Tarik's placement in ITU was not reasonably related to a legitimate goal and thus imposed for purposes of punishment; or (2) pursuant to *Youngberg* [*v. Romeo*, 457 U.S. 307, 317 (1982)], the level of restraint and restrictiveness in ITU was not reasonable under the circumstances.

(Op. at 14–15.) They, instead, object to the Court's application of *Bell* and *Youngberg* in its prior Opinion.

Defendants focus all of their attention on Tarik's initial placement in ITU, suggesting that the Court misunderstood the factual record. (*See, e.g.*, Defs.' Br. at 12 (discussing reasons for Tarik's initial placement in ITU), 13 (suggesting that "there is no basis to find that a factual dispute exists about whether [Defendant] Chacinski's placement decision on September 19, 2011, was the result of an incident of violence by Tarik"), 14 (concluding that "[b]ecause the Court did not review [Defendant] Chacinski's placement decisions in accordance with the appropriate standards . . . the Court erred in denying summary judgment"). However, Defendants ignore the other genuine issues of material fact identified by the Court that prevented summary judgment. The Court explained in its prior Opinion that "other, less restrictive [housing] alternatives were available at the time," such as Periodic Visual Observation and Seclusion + Observation. (Op. at 15–16.) The Opinion also noted that

> the Court is unclear as to how long Tarik was subject to ITU—an obscurity that must be viewed in the light most favorable to Plaintiff, the non-movant— especially considering Dr. Roth's notes one month after the incident suggesting that Tarik may have still been in the ITU at the time:
>
>> Q: Is there any indication at or about the time of your notes on November 16, 2011 why Tarik could not be transferred to a less restrictive unit?
>> A: No.
>> Q: Do you know a reason . . . as of November 16, 2011 that Tarik could not be transferred to a less restrictive unit?
>> A: I don't know, no.

5

(*Id.* at 16 (internal citation omitted).) The Court then concluded that factual disputes existed over—in addition to the circumstances that triggered Tarik's initial placement in ITU—"why the more restrictive environment of ITU was selected in the first place [over other less restrictive alternatives], how long after the incident . . . Tarik was placed in ITU, and exactly how long he was kept there and the progress of his stability during that time." (*Id.* at 16–17.) Defendants do not address any of these factual disputes in their Motion for Reconsideration. Accordingly, Defendants' Motion is denied in regard to Count III.

    B.  *Retaliation under the ADA and NJLAD (Count VI)*

In regard to Count VI, the Court's entire explanation for denying Defendants' Motion for Summary Judgment was as follows:

> Although Defendants contend that the "Fifth Amended Complaint should be dismissed with prejudice as to all [D]efendants in its entirety," Defendants offer no argument as to why Count VI, retaliation under the ADA and NJLAD, should be dismissed. Save for a reference of the claim in their "Preliminary Statement" section in their opening brief, Defendants do not even mention the word "retaliation" in their papers. This omission is striking in light of the fact that Plaintiff, unprompted, addressed the retaliation claim in her Opposition, yet Defendants failed to provide a rejoinder in their Reply. Because one need not prevail on a discrimination claim to prevail on a retaliation claim, summary judgement is denied and this Count survives Defendants' Motion [for Summary Judgment].

(Op. at 23 (internal citations omitted).)

In their Motion for Reconsideration, Defendants concede that they "admittedly did not include a separate discussion of 'retaliation' in their briefing." (Defs.' Br. at 6.) However, they insist that they did address this claim in their Statement of Facts; Point II in their opening brief, addressing "claims of alleged abuse" (Defs.' Summ. J. Br. at 24, ECF No. 92-1); and Point III in their reply brief, again addressing "claims of alleged abuse" (Defs.' Summ. J. Reply at 9–11, ECF No. 101).

6

Defendants now describe a legal standard, cite applicable case law, and provide evidentiary support for their argument that Count VI should be dismissed. (*See* Defs.' Br. at 6–10.) But they did not provide *any* of these materials during the summary-judgment briefing. Although litigants may present "new evidence not previously available" in a motion for reconsideration, *N. River Insurance Co.*, 52 F.3d at 1218, there is no indication that any of the materials now presented before the Court were unavailable during the last round of briefing. Defendants now simply wish to get a second bite at the apple and relitigate this claim. *Cf. Hudson v. Siemens Logistics & Assembly Sys.*, 353 F. App'x 717, 724 (3d Cir. 2009) (affirming that if litigant "did not raise [an] argument until its motion for reconsideration . . . it was waived"). Accordingly, Defendants' Motion is denied in regard to this Count as well.

## II.     Plaintiff's Motion for Reconsideration (Count V)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. To allege a *prima facie* violation, the plaintiff must demonstrate that "(1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Haberle v. Troxell*, 885 F.3d 171, 178–79 (3d Cir. 2018) (quoting *Bowers v. NCAA*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)).

In its prior Opinion, the Court essentially found that Plaintiff failed to satisfy the causation and intent elements of an ADA violation. It explained, "Discrimination under the ADA requires causation, but there is no sign of animus or pretext by Defendants in regard to Tarik's disability or that Tarik was treated differently compared to his peers." (Op. at 22.)

7

Plaintiff now urges the Court to reconsider its Opinion because it applied an incomplete legal standard.[1] The Court agrees and now addresses both the causation and intent elements in an effort to rectify the legal standard upon which it relied in its prior Opinion.

A. *Causation*

First, in regard to causation, the Court in its previous Opinion raised questions about whether Tarik was placed, and remained for a period of time, in ITU *because of* his disability, granting summary judgment in part because there was no sign of discriminatory animus. (*See id.* at 21–22.) However, the Third Circuit has explained that

> the ADA make[s] clear that the unnecessary segregation of individuals with disabilities in the provision of public services *is itself* a form of discrimination within the meaning of those statutes, independent of the discrimination that arises when individuals with disabilities receive different services than those provided to individuals without disabilities. . . . [W]e will not eviscerate the ADA by conditioning its protections upon a finding of intentional or overt "discrimination."

*Helen L. v. DiDario*, 46 F.3d 325, 333–35 (3d Cir. 1995) (emphasis added) (reversing district court that had granted summary judgment in favor of defendants on ADA claim where plaintiff received care services in a segregated setting of a nursing home rather than an attendant care program). The plaintiff need not demonstrate discriminatory animus; the plaintiff's disability must merely "play[] a role in the . . . decisionmaking process and . . . ha[ve] a determinative effect on the outcome of that process." *Haberle v. Troxell*, 885 F.3d 171, 179 (3d Cir. 2018) (explaining that "if the [plaintiff's] disability was a 'but for' cause of the deprivation or harm he

---

[1] Plaintiff also identifies that "the benefit of a service, program, or activity of which Tarik was denied was the benefit of living on a general population ward at [Defendant] AKFC—thereby avoiding living in the ITU." (Pl.'s Br. at 4.) The Court had explained that Plaintiff had failed to specify the scope of that denial, but Plaintiff now conveys that the ITU term at issue was from October 31, 2011 to January 11, 2012. (*Id.* at 5.)

suffered, then the fourth element of an ADA claim has been met"). Indeed, the causation element in an ADA claim—requiring the plaintiff to be "subjected to discrimination by reason of his disability"—has been described as a "catch-all phrase that prohibits discrimination by a public entity." *Id.* at 180.

A recent opinion from the Third Circuit demonstrates this concept. In *Furgess v. Pennsylvania Department of Corrections*, the plaintiff, a prison inmate, suffered from a disability that affected his ability to see, walk, speak, and lift. 933 F.3d 285, 287–88 (3d Cir. 2019). The prison initially accommodated the plaintiff with a handicap-accessible shower stall but, as a result of a disciplinary action, the prison moved him to a Restrictive Housing Unit ("RHU") that lacked such a shower. *Id.* On appeal, the prison argued that the plaintiff's ADA claim lacked causation, contending that "[the plaintiff] was deprived of a shower because his own misconduct landed him in the RHU, which lacked accessible shower facilities, not because the [prison] intentionally discriminated against him on the basis of his disability." *Id.* at 291. Strikingly akin to the causation issue here, the court explained,

> As to causation, the sole cause of [the plaintiff]'s deprivation of a shower was his disability. The [prison]'s argument to the contrary fails because it conflates the alleged discriminatory action—failure to accommodate by not making the RHU showers handicapped-accessible—with the causation element of [the plaintiff]'s claims. . . . The [prison] tries to convince us that [the plaintiff] was in the RHU because of a disciplinary infraction, and that but-for his alleged misconduct, he would not be in the RHU and thus deprived of a shower. But the reason why [the plaintiff] was housed in the RHU is irrelevant. . . . [A] prison's obligation to comply with the ADA . . . does not disappear when inmates are placed in a segregated housing unit, regardless of the reason for which they are housed there.

*Id.*

Plaintiff challenges Tarik's prolonged, and more restrictive than necessary, placement in ITU under 28 C.F.R. § 35.152(b)(2), which requires state facilities to "ensure that inmates or

9

detainees with disabilities are housed in the most integrated setting appropriate." Like in *Helen L.*, where the plaintiff raised an ADA claim under a regulation that requires services to be administered "in the most integrated setting appropriate," the alleged failure to keep Tarik integrated in the general-population ward in violation of § 35.152(b)(2) is "is itself a form of discrimination." *See Helen L.*, 46 F.3d at 332 (discussing plaintiff's challenge via 28 C.F.R. § 35.130(d)). Defendants point to Tarik's inappropriate behavior (*see, e.g.*, Defs.' Br. at 4–7 (listing examples)) and essentially argue that but-for Tarik's misconduct, he would not have been placed in ITU in the first place. This may be true, and it may also be true that this argument would be dispositive if Plaintiff merely challenged Tarik's *initial placement* in ITU, but Plaintiff also challenges Tarik's *prolonged stay* in ITU. The Court already explained that, in regard to Plaintiff's constitutional claim, "even if ITU was appropriate at the time of the incident, the appropriateness was not everlasting." (Op. at 16.) Therefore, "the reason why [Tarik] was [initially] housed in [ITU] is irrelevant." *Furgess*, 933 F.3d at 291. After all, it was Defendants who elected to place, and keep, Tarik in ITU.

      B.      *Intentional Discrimination*

Second, the applicable intent—intentional discrimination—described in the Court's prior Opinion was incomplete. The Third Circuit has explained that there are "*two* alternative standards suggested for intentional discrimination: discriminatory animus and deliberate indifference." *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262 (3d Cir. 2013) (emphasis added). Although the Court analyzed whether Defendants exhibited discriminatory animus, the Court did not, alternatively, analyze whether Defendants exhibited deliberate indifference. (*See* Op. at 22 (noting that "there is no sign of animus or pretext by Defendants").) Although Plaintiff did not raise this theory of intentional discrimination in her prior papers (*see* Pl.'s Summ. J. Br.

10

at 15–19, ECF No. 94 (discussing ADA claim))—and thus the Court did not take up the analysis in its prior Opinion—she does so in her instant papers (*see* Pl.'s Br. at 9). In an effort to apply the correct, comprehensive legal standard here, the Court addresses it now.

The Court in its prior Opinion indicated that it was *necessary* for Plaintiff to prove discriminatory animus in order to satisfy intentional discrimination (*see* Op. at 22 (noting that "there is no sign of animus or pretext by Defendants in regard to Tarik's disability")), but discriminatory animus is merely *sufficient* to satisfy such a standard. In comparison to discriminatory animus where direct evidence may be presented, "intentional discrimination may [also] be inferred when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy or custom." *S.H.*, 729 F.3d at 263–64 (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)) (explaining that discrimination under the ADA "is primarily the result of apathetic attitudes rather than affirmative animus"). Indeed, "[d]eliberate indifference does not require a showing of personal ill will or animosity toward the disabled person." *Id.* (internal citations omitted). In order to demonstrate deliberate indifference, a plaintiff must show "both (1) 'knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that likelihood.'" *Id.* at 263 (quoting *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).

The Court already determined, in its prior Opinion, that (1) "factual disputes exist over why the more restrictive environment of ITU was selected in the first place, how long after the incident and under what circumstances Tarik was placed in ITU, and exactly how long he was kept there and the progress of his stability during that time"; and (2) "[r]egardless of whether one interprets it to be the right to appropriate treatment or the right to a less restrictive environment

11

while confined by the state or whether it is the right to be free from confinement for purposes of punishment, the factual allegations here touch upon a clearly established right." (Op. at 14–18 (internal citations omitted).) Those issues precluded summary judgment in regard to Plaintiff's constitutional claim. In other words, the Court already determined that the question of qualified immunity and its associated issues—namely, whether a reasonable doctor in Defendant Chacinski's situation could have believed that his placement and prolongment of Tarik in ITU comported with established legal standards—could not be resolved at this stage in the litigation.

The same factual disputes at issue in the qualified immunity analysis overlap here with the deliberate indifference analysis. (*Compare* 5th Am. Compl. at 4–10 (alleging, under Count III, that Tarik's placement in ITU was more restrictive than necessary violated his due process right to be free from unreasonable restraints), *with id.* at 19–21 (alleging, under Count V, that Tarik's placement in ITU failed to adhere the ADA's requirement of being "housed in the most integrated setting appropriate" under § 35.152(b)(2)).) Because those factual disputes precluded summary judgment in regard to Plaintiff's constitutional claim, they must also, to remain consistent, preclude summary judgment in regard to Plaintiff's ADA claim. *Cf. Meyers v. Majkic*, 189 F. App'x 142, 144 (3d Cir. 2006) ("Because there is a genuine issue of fact as to whether [defendant] was deliberately indifferent, he has not carried his burden to establish that he is entitled to qualified immunity."); *Carter v. City of Phila.*, 181 F.3d 339, 356 (3d Cir. 1999) ("If [plaintiff] succeeds in establishing that the . . . defendants acted with deliberate indifference to constitutional rights . . . then *a fortiori* their conduct was not objectively reasonable [under the qualified immunity analysis].").[2] Accordingly, the Court grants Plaintiff's Motion for

---

[2] Although the cited authority herein stand for the proposition that if a plaintiff succeeds in establishing that a defendant acted with deliberate indifference to the plaintiff's constitutional

Reconsideration and revives Plaintiff's ADA claim in Count V.[3]

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Reconsideration is granted, and Defendants' Motion for Reconsideration is denied. An appropriate Order will follow.

Date:   September 18, 2019                    */s/ Anne E. Thompson*
                                                                ANNE E. THOMPSON, U.S.D.J.

---

rights then the defendant's conduct was not objectively reasonable such that the qualified immunity defense is not available, the inverse is also true as it specifically applies to the instant facts. Though a defendant who objectively should have known that his conduct was not reasonable in light of a federally protected right (*i.e.*, not entitled to qualified immunity) does not necessarily mean that the same defendant subjectively knew that his conduct was substantially likely to harm a federally protected right (*i.e.*, exhibiting deliberate indifference), *see Horton v. City of Santa Maria*, 915 F.3d 592, 600 (9th Cir. 2019) (characterizing deliberate indifference as a subjective test and qualified immunity as an objective test), the factual disputes already identified in the Court's prior Opinion—specifically, "why the more restrictive environment of ITU was selected in the first place, how long after the incident and under what circumstances Tarik was placed in ITU, and exactly how long he was kept there and the progress of his stability during that time" (Op. at 16–17)—also prevent a finding of what Defendants subjectively knew at the time of Tarik's placement in ITU, why they selected ITU over less restrictive alternatives, and what risks they may have elected to disregard in making the initial-placement and prolonged-stay decisions.

[3] Because discrimination claims under the NJLAD track the same analysis as those under the ADA, the Court also revives Plaintiff's NJLAD claim contained within Count V. *See Lawrence v. Nat'l Westminster Bank*, 98 F.3d 61, 70 (3d Cir. 1996) (citing New Jersey state-court decisions and explaining that "the ADA and [NJ]LAD claims are governed by the same standards").